UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAYLUN A. FULLER,

      Defendant.

Case No. 25-cr-20545

Honorable Robert J. White

---

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 18)**

---

In 2025, Michigan State Police (MSP) troopers stopped a vehicle in which Defendant Jaylun Fuller was a passenger. That stop led to a search, during which the troopers discovered a firearm near Fuller's seat. Fuller contends the stop was unlawful. He therefore moves to suppress the firearm and all other evidence arising from that stop. For the reasons explained below, his motion will be denied.

## I.    Background.

In the early-morning hours of July 5, 2025—that is, the night of the Fourth of July—in Saginaw, Michigan, MSP troopers Dylan Neill and Aaron Weston stopped a vehicle carrying five occupants, including Fuller. The troopers initiated the stop after two events occurred: (1) the vehicle accelerated through an intersection at a

high rate of speed, prompting the troopers to follow the vehicle; and (2) once following the vehicle, Trooper Weston reviewed the Law Enforcement Information Network (LEIN) database, which indicated that the vehicle lacked valid insurance. (ECF No. 27, PageID.600).

After the stop, the troopers investigated the apparent lack of insurance. Upon Trooper Neill's request, the car's driver produced a license, registration, and a paper certificate of insurance, explaining that the car belonged to his girlfriend. *Neill Body Camera*, 00:23–01:30. Trooper Neill then probed for whether the driver had any alcohol and whether there was anything concerning in the car, including alcohol, narcotics, and firearms. *Id.* at 01:30–02:35. When the driver denied that any such items were in the car, the troopers returned to their patrol vehicle and discussed the stop while Trooper Weston ran warrant checks. During that time, Trooper Neill confirmed that Trooper Weston had said, "that there was no insurance on the car." *Id.* at 03:04–06. Once confirmed, Trooper Neill replied that he would "have him get out and just talk to him" about the discrepancy in the LEIN record and the certificate of insurance. *Id.* at 03:06–14.

Trooper Neill returned to the car and asked the driver to step out to talk. *Id.* at 03:22–32. He complied, at which point Trooper Neill frisked him for weapons and questioned him about the insurance discrepancy. *Id.* at 03:38–04:15. The driver indicated that they may have missed a payment on the insurance, which, in Trooper

- 2 -

Neill's view, would explain why the LEIN system "show[ed] no insurance on the car." *Id.* at 04:15–26.

After that colloquy, Trooper Neill asked whether there was anything in the car he had "to worry about" during the investigation. *Id.* at 04:30–33. The driver stated that there was not, so Trooper Neill asked whether he could search the car to verify. *Id.* at 04:33–36. When the driver refused consent to search the car, the troopers ordered the remaining occupants to exit until they "were all done, just for a safety reason" because he did not "know what's in [the] car." *Id.* at 04:37–05:24.

At that point, the troopers ordered the occupants out of the vehicle. *Id.* at 05:30–6:13. As one rear passenger stepped out, a trooper saw an open container of alcohol on the floor near his feet. *See id.* at 06:14–35. The troopers then handcuffed all occupants and searched the vehicle. *Id.* at 06:35–11:27. That search uncovered a loaded semi-automatic handgun beneath the front passenger seat, the area directly in front of where Fuller sat. (ECF No. 27, PageID.615).

Federal criminal charges followed. On July 23, 2025, a grand jury indicted Fuller—who had a prior felony conviction—for possessing a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). Fuller later moved to suppress all evidence flowing from the stop that led to his charges, contending that the troopers violated

the Fourth Amendment to obtain that evidence. (ECF No. 18). The Court held an evidentiary hearing on the motion on April 27, 2026.

## II.     Legal Standard.

The Fourth Amendment forbids "unreasonable searches and seizures." Const. Amend. IV. Because traffic stops seize a vehicle's occupants, they must be reasonable to comply with the Fourth Amendment. *Heinen v. North Carolina*, 574 U.S. 54, 60 (2014). And when a stop is in any way unreasonable, a court generally must suppress "any evidence seized during a vehicle search premised on" that unlawful stop. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012).

## III.    Analysis.

Fuller's argument for suppression is twofold. First, he argues that the stop was unlawful at its inception. Second, he contends that even if lawfully initiated, the troopers unlawfully prolonged it. Each argument is addressed below in turn. Neither prevails.

## A.     The Stop Was Reasonable at Its Inception.

Begin with Fuller's argument that the stop was unlawful at its inception. He argues that the troopers lacked probable cause to stop the car for a civil infraction, rendering the stop unlawful. This argument lacks merit.

Troopers may stop a vehicle "based on mere 'reasonable suspicion' that a felony has occurred or that a misdemeanor is occurring." *United States v. Brooks*,

987 F.3d 593, 598 (6th Cir. 2021). Reasonable suspicion requires "more than a mere hunch" but less than probable cause and exists when an officer can point to "specific and articulable facts" providing a "particularized and objective basis" for suspecting criminal activity. *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (citation modified). They may also "conduct a traffic stop when" they possess "probable cause to believe that a traffic violation occurred." *United States v. Watson*, 142 F.4th 872, 876 (6th Cir. 2025). Probable cause is likewise a low bar, demanding only "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Peake-Wright*, 126 F.4th 432, 438 (citation modified).

Here, the officer possessed probable cause to stop the vehicle. Michigan law makes it a misdemeanor to operate a motor vehicle on a public highway without the required insurance. Mich. Comp. Laws § 500.3102(2). A person who knowingly operates an uninsured vehicle is subject to a fine, imprisonment for up to one year, or both. *Id.* LEIN indicated that the vehicle lacked insurance. That gave the troopers probable cause to believe the vehicle was being operated in violation of § 3102(2). *United States v. Conley*, No. 21-1723, 2023 WL 165966, at *4 (6th Cir. Jan. 12, 2023).[1]

---

[1] Because the relevant offense is a misdemeanor, the troopers seemingly only needed reasonable suspicion to stop the vehicle. *Brooks*, 987 F.3d at 598. Yet the parties'

Fuller fights that conclusion. He contends that the insurance information in the LEIN database cannot provide probable cause. He reasons that, under Michigan law, the database's information could have been up to 14 days old, (ECF No. 36, PageID.681) (citing *People v. Mazzie*, 3926 N.W.2d 359 (Mich. Ct. App. 2018)), rendering it stale.

But both the Sixth Circuit and this Court have held that LEIN insurance information supplies probable cause for a stop. *Conley*, 2023 WL 165966, at *4; *United States v. Lawrence*, 425 F. Supp. 3d 828, 833 (E.D. Mich. 2019) (collecting cases). In *Conley*, the Sixth Circuit held that "LEIN information is enough to establish probable cause" even if that information is inaccurate because "such a proposition is a natural extension of [its] holding that a digital 'license check' can establish probable cause to execute a stop." 2023 WL 165966, at *4 (quoting *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004)). *Conley* noted that "both situations involve officers reasonably relying on information found within a law enforcement database." *Id.* And that potentially 14-day-old information is not stale; the suspected offense is a continuing violation of state law. *See Sandridge*, 385 F.3d at 1036 (holding that three-week-old information concerning the status of a license underlying a continuing violation of state law was not stale); *see also United States*

---

briefing focuses on probable cause. Even so, because the troopers satisfied the higher probable cause standard here, this point proves insignificant.

*v. Cortez-Galaviz*, 495 F.3d 1203, 1209 (10th Cir. 2007) (Gorsuch, J.) (holding that 20-day-old insurance information in a database was not stale).

Fuller also implies that the troopers lacked probable cause because the driver later produced a purportedly valid proof-of-insurance card. (ECF No. 18, PageID.60–61). That misses the point. The driver presented the card only after the stop had begun. Probable cause is assessed based on the facts known to the troopers when they initiated the stop, not on information learned afterward. *See Hoover v. Walsh*, 682 F.3d 481, 500 n.52 (6th Cir. 2012). The later production of proof of insurance therefore does not undermine the validity of the stop at its inception.

Finally, Fuller routinely highlights that the troopers were part of a proactive policing unit. As Trooper Neill testified at the evidentiary hearing, that unit focused on "making lawful traffic stops and" using them to look "for warrants for violent felons as well as additional crimes such as the illicit carrying of firearms, narcotics, and other contraband." (ECF No. 27, PageID.597–98). Fuller contends that this reveals the true purpose of the troopers' stop—arguing that it was pretextual. But whether their stop was pretextual is irrelevant: when officers objectively possess probable cause, the "constitutional reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers." *Whren v. United States*, 517 U.S. 806, 813 (1996).

In sum, the troopers had probable cause to believe the vehicle was uninsured in violation of Michigan law when they stopped it. As a result, their stop was lawful at its inception.

## B.      The Stop Was Reasonable in Its Duration.

Fuller next argues that the troopers unlawfully prolonged the stop. He contends that after the driver produced valid proof of insurance, the stop should have ceased because the stop's mission was complete. Thus, everything that occurred after was unlawful. This argument, while stronger, also fails.

A traffic stop may "last no longer than is necessary" to complete its mission. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quotation omitted). That mission includes checking the driver's license, registration, and insurance, running warrant checks, and addressing ordinary safety concerns. *Id.* at 354–55. Although an officer may "conduct certain unrelated checks," he may not do so in a way that "measurably extend[s] the duration of the stop." *Id.* at 355. (citation modified). "Authority for the seizure ends when tasks tied to the" violation "are—or reasonably should have been—completed." *Id.* at 354. But an officer may prolong a stop if, before the stop's mission is complete, the officer develops reasonable suspicion of additional criminal activity. *United States v. Williams*, 68 F.4th 304, 309–10 (6th Cir. 2023).

The troopers acted within those limits here. They stopped the vehicle because the LEIN system indicated it lacked valid insurance. Trooper Neill approached the vehicle, lawfully requested the driver's identification, *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010), and asked brief "context-framing" questions about the occupants' activities, *United States v. Williams*, 68 F.4th 304, 307 (6th Cir. 2023). When the driver produced what appeared to be a valid insurance card, Trooper Neill returned to the patrol car to compare that information with the LEIN report. After Trooper Weston confirmed that LEIN still reflected no valid insurance, Trooper Neill returned to the driver to resolve the discrepancy. At every step, the troopers advanced the very reason for the stop.

Because Trooper Neill was lawfully pursuing that investigation, he was entitled to ask the driver to step out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). His brief conversation with the driver did not unlawfully prolong the stop because it sought to clarify the conflicting evidence concerning the vehicle's insurance status. *United States v. Hoover*, 179 F.4th 454, 467 (6th Cir. 2026). Indeed, that discussion's revelation—that the policy may have lapsed because of missed payments, despite the existence of an insurance card—gave the troopers further reason to investigate whether the vehicle was, in fact, uninsured. Because the investigation was ongoing, the troopers also acted within their authority by directing the passengers to exit the vehicle to ensure officer safety. *United States v. Santos*,

131 F.4th 412, 417–18 (6th Cir. 2025) (citing *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997)).

The encounter took a different turn once the passengers exited. The troopers immediately observed a bottle of alcohol, giving rise to reasonable suspicion that the occupants were violating Michigan's open-container law. *See* Mich. Comp. Laws § 257.624a. That development justified extending the stop to investigate additional criminal activity and supplied probable cause to search the vehicle for additional evidence of the offense. *United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008); *United States v. Latham*, 763 F. App'x 428, 431 (6th Cir. 2019); *United States v. Sharp*, No. 22-3214, 2023 WL 2424604, at *3 (6th Cir. Mar. 9, 2023). The firearm discovered during that lawful search therefore is not subject to suppression.

Fuller's principal argument fares no better. He contends that the stop should have ended once the driver produced a facially valid insurance card because Michigan law treats such a card as prima facie evidence of insurance. *See* Mich. Comp. Laws § 257.328(2). But the argument overlooks the conflicting evidence before the troopers. LEIN continued to report that the vehicle lacked valid insurance. Faced with that conflict, the troopers were not required to accept one source and ignore the other. They were entitled to continue the stop long enough to resolve the discrepancy. As the Sixth Circuit recently explained, when conflicting information emerges during a traffic stop, an officer may continue investigating to obtain

"clarification," provided that the investigation remains "within the purpose or mission of the stop." *Hoover*, 179 F.4th at 467. That is precisely what occurred here.[2]

## IV. Conclusion.

In short, Fuller's motion presents no basis to suppress the relevant evidence. The stop was lawful both at its inception and in its duration.

Accordingly, it is **ORDERED** that Defendant Jaylun A. Fuller's Motion to Suppress, ECF No. 18, is **DENIED**.

Dated: July 17, 2026

s/ Robert J. White
Robert J. White
United States District Judge

---

[2] The Government argues that Fuller lacks standing to challenge much of the stop and the ensuing search. The Court need not resolve that issue because Fuller challenges only the legality of the stop itself. As a seized passenger, he "possesses standing to challenge his alleged unlawful seizure and the evidence that flowed from the search and seizure." *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007).